**RAUB SUPPLY COMPANY**

v.

**AMANA REFRIGERATION, INC.**

Civ. A. No. 77–1579.

United States District Court,
E. D. Pennsylvania.

May 31, 1979.

William A. DeStefano, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiff.

Sidney Wickenhaver, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is an action by Raub Supply Company (Raub) against Amana Refrigeration, Inc. (Amana) alleging that Amana breached its contract by terminating Raub as a distributor of appliances manufactured by Amana. Amana has moved for summary judgment, contending that the termination was proper under the terms of the distributor agreement; Raub has cross-moved for partial summary judgment as to the liability of Amana.

In November of 1966, the parties executed an agreement prepared by Amana, in which it was provided that Raub would distribute Amana products in various counties in Pennsylvania, Maryland, West Virginia and Virginia. This agreement remained in effect, subject to periodic revisions by Amana as to products or assigned territories, and other matters. The most recent revision occurred July 5, 1975, and it was the revised agreement entered into on that date which was in effect at the time of the termination, two provisions of which are particularly relevant.

Article XV of the Agreement reads as follows:

"XV. AGREEMENT NOT ASSIGNABLE: This Agreement shall be binding upon and inure to the benefit of parties hereto, their heirs, successors and assigns, but cannot be directly or indirectly assigned or transferred by the Distributor either in whole or in part without the express written consent of Amana. This Agreement shall be effective the day and year first above written."

Article XI, paragraph 1, provides:

"XI. TERMINATION:

1. This Agreement may be terminated by either party at any time for any reason upon giving ten (10) days notice of same by registered mail or telegram to

the other party, which termination shall be effective ten (10) days from the receipt of said notice. Notwithstanding the foregoing, Amana may terminate this agreement by written notice to the Distributor effective immediately in the event the Distributor fails to comply with any of the provisions of this Agreement; or if Distributor shall become insolvent or bankrupt or admit in writing its inability to pay debts as they become due; or Distributor makes an assignment for the benefit of creditors, whether voluntary or involuntary, or if a petition is filed by or against Distributor under the bankruptcy act; or if Distributor ceases to do business as a going concern."

Amana alleges that it terminated Raub for two reasons. First, it contends that the sale of Raub's stock to another set of shareholders constituted a transfer of the distributorship agreement without Amana's consent, and justified termination under Article XV. Second, it contends that Article XI permits termination by either party "at any time for any reason", and the sale of the Raub stock constituted at the very least a "reason" for purposes of Article XI even if it was not a transfer of the distributorship agreement in violation of Article XV.

Although we have grave doubts as to whether the sale of Raub stock constituted even an indirect transfer of the distributorship agreement, we conclude that termination was proper under the Article XI provision for termination "by either party at any time for any reason". In a letter dated December 22, 1976, Alex Meyer, Executive Vice President of Amana, informed George Hartman, Raub's President, that Amana did not approve of the sale of the stock, which Meyer referred to as the "sale of your business", and that "this letter constitutes Notice of Termination of the Distributor Agreement between Amana and your company in accordance with Articles XI and XV of that Agreement." Raub contends that this letter did not constitute termination under Article XI, "for any reason", because ten days' notice was not given, since the letter was dated December 22, and the sale of the stock was to be effective

December 29 and since ten days' notice of termination was not given, Amana's intent was clearly to terminate for improper assignment of the agreement under Article XV.

However, there is no factual basis for this contention by Raub. The letter says that there will be a sale effective December 29 of which Amana does not approve, but the letter does not say that termination is to be effective on that date. In fact, there is nothing on the record to indicate that the termination was to be effective December 29; the letter itself does not say when termination was to be effective. On the other hand, Amana has submitted evidence in the form of a Daily Call Report which details the activities of Chad Calabria, Amana's regional salesman. Calabria wrote:

"Spent three days at home contacting Amana and all distributors. In touch with Leon Bausch trying to get instructions on what to do concerning Raub Supply Company in the territory. Told to hold tight until the ten day grace period for cancelling distributor is over—which is 1/3/76 (sic)."

This report by Calabria indicates the state of mind of the Amana officials, which was that termination was to be effective only after a period of ten days, and was not to be effective on December 29. There being no evidence to rebut this evidence, this Court is compelled to conclude that the provisions of Article XI regarding termination for any reason upon the giving of ten days' notice were invoked, and that termination for any reason was proper. Therefore, we need not decide if the sale of Raub stock constituted an assignment of the agreement justifying termination on that ground.

Accordingly, we will grant Amana's motion for summary judgment and deny Raub's motion for partial summary judgment.